Filed 7/9/26  In re A.D. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.D., et al, Persons Coming Under the Juvenile Court Law. | B341370 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | Los Angeles County Super. Ct. No. CK14637C–E |
| Plaintiff and Respondent, | |
| v. | |
| A.D. et al., Minors, etc. | |
| Appellants; | |
| MANUEL B., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gabriela Shapiro, Juvenile Court Referee. Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Appellants A.D. and H.D.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kelly G. Emling, Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Since 2017, appellant Manuel B. has been the legal guardian of Al.D., A.D., and H.D.  In 2023, Manuel B. agreed to accept another child, foster teen Aiden T., into his home.  In late 2023, Manuel B. discovered Aiden T. had drugs and a gun in the home.  This was the second time Manuel B. found Aiden T. with a gun in his possession.  Manuel B. took the contraband and Aiden T. to a motel where he hoped to counsel Aiden T.  Both he and Aiden T. were later arrested.  (Aiden T. is not a party to or subject of this appeal.)

The Los Angeles County Department of Children and Family Services (the Department) filed a supplemental petition under Welfare and Institutions Code section 387[1] to remove all three children from Manuel B.'s custody; they were detained and later returned to his custody.  Manuel B. now contends the juvenile court should have dismissed the supplemental petition once it decided not to remove the children from his care because, at the time of the court's adjudication of the petition, the children were not facing a current risk of harm.  He also contends

_____

[1]     Further undesignated statutory references are to the Welfare and Institutions Code.

2

substantial evidence does not support the court's order sustaining the supplemental petition. We affirm.

## A.     **Procedural Background**

Over 10 years ago, on April 17, 2015, the Department filed a petition pursuant to section 300, subdivisions (a) and (b) alleging that Al.D., A.D., and H.D. had been physically abused by their mother, who struck them with belts and her hands. The petition also alleged domestic violence between the children's mother and her male companion in the presence of the children and that both the children's parents had a history of substance abuse posing a risk of harm to the children.

On July 16, 2015, the juvenile court sustained all counts of the petition with some interlineations to the allegations against the father. On August 16, 2015, the juvenile court declared the children dependents of the court, removed them from parental custody, and bypassed reunification services for the parents under section 361.5, subdivision (b)(10) because they had earlier failed to reunify with another child and failed to make reasonable efforts to treat the problems that led to that child's removal. On October 4, 2016, the court selected legal guardianship as the permanent plan for the children. On January 3, 2017, the juvenile court named Manuel B. the legal guardian for all three children. Manuel B. knew the family; he had acted as a care provider for the children's disabled mother.

In the following five years, the juvenile court held regularly scheduled six-month status hearings on the legal guardianship, finding the children's placement with Manuel B. appropriate. As late as May 15, 2023, the juvenile court found the children's case plan and placement appropriate and confirmed "placement in

foster care with a permanent plan of legal guardianship" as the appropriate plan for each of them.

### B.     Events Leading Up to the Supplemental Petition

When the initial petition was filed in 2015, Manuel B. was identified as a family friend and the mother's in-home caregiver who knew the children and had cared for them in the past. Manuel B. was interviewed about the allegations of the petition. He was later appointed legal guardian for the children. The guardianship case was to remain open for periodic court review until the children reached the age of majority.

In 2023, Manuel B. agreed to accept foster child Aiden T. for placement in his home. (He had been opening his home to other teenaged foster children.) On October 19, 2023, Manuel B. discovered Aiden T. had an assault rifle in his school bag and wrested it away from him. Upon finding the rifle, Manuel B. called the police. Aiden T. ran away from the home but was soon arrested and placed in juvenile hall. Police found a fully loaded 30 round high-capacity magazine in the school bag as well. The children were scared and terrified. Manuel B. wanted Aiden T. placed elsewhere.

On November 13, 2023, in response to learning that Aiden T. and other foster children had been referred to the home, the juvenile court ordered the Department to speak with Manuel B. "about the referrals and having additional children move into the home, and the negative impact on the children." The Department and Manuel B. met on November 15, 2023, to discuss safety in the home and the negative impact of housing other foster youths in the home. Manuel B. agreed to be vigilant in ensuring safety with backpack and room searches and agreed he would make sure all the youth in his home were safe and followed the rules.

4

On December 18, 2023, the juvenile court continued to find the children's placement with Manuel B. appropriate.

On May 20, 2024, the Department received a referral that the previous day Manuel B. had been hospitalized with a broken wrist after an ATV accident, may have left the children unsupervised, and had tested positive for fentanyl, opioids, and amphetamines while hospitalized. Manuel B. provided medical records showing the drugs were prescribed by his primary care physician and given to him intravenously at the hospital. Upon inquiry, Manuel B. showed the social worker that his medications were in a locked cabinet at home. Manuel B. agreed not to transport the children while using the medication and to submit to drug testing. He also had the support of family members to step in for him to help with transportation.

C. **Supplemental Petition Under Section 387**

On June 11, 2024, the Department advised the court that Manuel B. had taken Aiden T. to a motel in the middle of the night on June 8, 2024, leaving the other children unattended overnight and uninformed about his whereabouts. The motel manager had called the police upon observing "a guest possibly brandishing a firearm." Police arrived and found both Manuel B. and Aiden T. apparently "under the influence of an unknown controlled substance(s)." Aiden T. was passed out; he later admitted using Xanax that night. Officers found a firearm, ammunition, gasoline, methamphetamine and a jar of Vaseline in the motel room. Aiden T. told police he and Manuel B. had come to the motel to get away from the other children in the home. Police arrested Manuel B. on charges of child endangerment and possession of a firearm and ammunition by a felon. The

5

Department applied for and obtained a removal order for Al.D., A.D., and H.D.

Upon further inquiry, Manuel B. told a department investigator the gun belonged to Aiden T.  He said he brought Aiden T. to the motel room to talk to him.  He later told the children's mother that he wanted to talk to Aiden T. outside the home because if something happened in the home, he would not be able to physically protect the children due to the injuries he had suffered in the ATV accident. (He had suffered a broken wrist and ribs and a hernia.)  Aiden T. denied knowing about the gun.  He stated it belonged to Manuel B.

The investigator went to the family home and saw the children outside.  A.D. said their adult cousin Naima A. was watching them.  Naima A. allowed the investigator into the home, where he found in Aiden T.'s room two empty bottles of Adderall, cough medicine Children's Delsym, brass knuckles, Farmapram, Promethazine DM Oral Solution, and Promethazine-DM.  Manuel B.'s medicine cabinet was unlocked. In the living room where Manuel B. had his bed were one and one-half boxes of ammunition and a box of individually packed two-dollar bills.  In the garage were a machete, a pocketknife, marijuana, rolling papers, and a flavored cigarette.

The children were interviewed.  They reported that if Manuel B. was away, he would normally have another adult there to watch them.  Al.D. told the investigator he heard Manuel B. and Aiden T. leave the home at approximately 2:30 a.m. when he was up playing video games.  Naima A. said she spent the entire night there; Al.D. said she was with them, went home during the night and returned the next morning.  All denied

6

observing Manuel B. use drugs or engage in inappropriate behavior. All wanted to be returned to him.

Manuel B. was interviewed on June 9, 2024. He said he discovered a handgun in Aiden T.'s room, directed the child to collect the gun and other improper items, including drugs, and took him to a motel room to talk to him about his bad behavior. He chose to speak to Aiden T. at the motel because he did not want Aiden T. to get another gun charge because he was on probation for his earlier possession of a rifle.

Manuel B. was arrested before he could discuss the gun with Aiden T. Manuel B. said the drug Farmapram was an anti-anxiety medication produced in Mexico which Aiden T. had acquired at school. The Vaseline in the hotel room belonged to Aiden T.; he used it for dry lips caused by his drug use. Manuel B. denied using marijuana and said it, as well as the firearm, belonged to Aiden T. Manuel B. denied owning a gun. He said he was trying to help Aiden T. on the date of the incident. Manuel B. was responsive and cooperative with the Department. He was criminally charged with possession of a controlled substance while armed, child endangerment, and possession of a firearm and ammunition by a felon.

On June 13, 2024, the Department filed a supplemental petition under section 387, alleging Manuel B. created a detrimental and endangering condition in the home because prescription medication, brass knuckles, boxes of ammunition, a machete, a pocketknife, marijuana, and drug paraphernalia were found in the home within the children's access. The medicine cabinet was unlocked with the medication inside. The petition also alleged that on June 8, 2024, law enforcement found Manuel B. in a motel room with Aiden T, along with a firearm,

7

ammunition and narcotics. Aiden T. was transported to a hospital and tested positive for marijuana, benzodiazepine, and opioids. The petition listed the criminal charges against Manuel B. and noted he had previously been convicted in 2004 and 2005 for possession of a controlled substance. Finally, the petition alleged Manuel B. left the home on June 7, 2024, for an extended period of time and failed to make an appropriate plan for the supervision and care of the children.

On June 14, 2024, the juvenile court detained all three children on the supplemental petition. The children ultimately moved back into the family home with Manuel B.'s niece as caregiver. Manuel B. moved out of the home and entered into a rental agreement with the caregiver.

In its jurisdiction/disposition report filed July 30, 2024, the Department reported Manuel B. stated that once he found the gun in Aiden T.'s bedroom he became "emotional, distracted and confused"; he did not want law enforcement to take Aiden T. so he took him to the motel to talk to him. "It was a crazy night I had 3 kids to protect so I removed everything I found." He said he had asked the Department several times to remove Aiden T. from the home, but the Department kept reminding him that Aiden T. had abandonment issues and had been re-placed often. Manuel B. had a childhood similar to Aiden T.'s and thought he could help him, so he agreed to keep working with Aiden T.

The Department faulted Manuel B. for poor judgment in failing to contact law enforcement when he discovered Aiden T. had a gun in the home for a second time. It questioned the logic of Manuel B.'s reasoning for going to the motel with the gun and drugs. It concluded Manuel B. had placed the children in a detrimental and endangering home environment and failed to

8

make an appropriate plan for the children's safety and supervision, recommending removal of the children from Manuel B.'s care and an appropriate case plan for Manuel B.

On August 30, 2024, the Department filed a first amended petition adding an allegation that Manuel B. established a detrimental and endangering condition for Aiden T. based on the facts set out above.

Before the adjudication hearing set for September 30, 2024, the Department recommended family reunification services and a comprehensive case plan for Manuel B. which included random weekly drug testing, parenting education, individual counseling, and unannounced home calls. At the adjudication hearing the juvenile court interlineated the petition and found true only the failure to protect count. The interlineated allegation read in full: The children's legal guardian, Manuel B., "created a detrimental and endangering home environment for the children, in that the legal guardian allowed another minor youth to reside in the home and have full access to the children even after finding that youth in possession of a firearm the previous year. Additionally, the legal guardian should have known that the youth was known to possess unlawful substances and illegal weapons and that they were in the home. Such a detrimental and endangering home environment established by the legal guardian, endangers the children's physical and emotional health, safety and well-being and places the children at risk of serious physical harm, damage, and danger."

In making its findings, the juvenile court observed that "[T]he worst part of this entire situation is that all three of the kids are really good kids and I think that [the] description of them being intelligent kids, good kids, they don't get into trouble,

9

they do well in school, is a reflection not only on themselves but also on the care they have received during the past decade that Mr. [B.] has been their legal guardian. But it's truly unfortunate that in trying to save this other youth, Mr. [B.] really left these kids floating without an oar. [¶]. . . [¶] And I really think that the biggest fault that I note of the legal guardian in this particular instance is his kinship of sorts with the background that the other youth has and finding a similarity with Mr. [B.'s] background caused him to just completely disregard his relationship with and his obligations to these children." The juvenile court ultimately concluded: "So while I'm not going to sustain S2 and S3, I believe that I need to sustain . . . a count that indicates that the legal guardian created a detrimental and endangering home for the children in that he allowed this other youth in the home and that he should have had knowledge of the potential risk of firearms and illegal substances being in the home because of that youth and that that placed these children at risk of harm. [¶] So . . . I'll write it out naming the legal guardian. Dismissing S2 and S3 as the court finds the department has not met its burden by a preponderance of the evidence to sustain those counts. [¶] And the court is going to note that the children remain dependents of the court pursuant to the Welfare and Institutions Code and that it appears that based on this act that the prior disposition was ineffective in protecting the youth."

The court ordered the children released to Manuel B., finding the Department had not met its burden of proof as to removal. It changed the terms and conditions of the prior disposition by ordering the Department to provide Manuel B. and the children with family maintenance services, random weekly on-demand drug testing and counseling for Manuel B. and

10

unannounced visits to the home.  It ordered the Department not to place additional children in the home.  Finally, it ordered that any other residents in or visitors to the home be approved by the Department.  The court particularly cautioned Manuel B. about the necessity of individual counseling "to talk about your own trauma . . . and make sure that you don't have any kind of a savior complex with anyone else. [¶] I think that you should reflect on what you've been able to provide to these kids in the last decade and recognize that that's an accomplishment and an achievement and not all of us are here to pay it forward in another way.  And I almost hate to say that to you, but I think there are safer and better ways for you to do what you tried to do."  The court concluded with a statement to the children: "I want to thank you for being who you are and showing me the light in this case by being standup individuals, speaking the truth, and not backing down.  And that's really important so your voice was heard today. [¶] And that's another reason to be proud, Mr. [B.], and keep that in mind moving forward."

Manuel B., A.D., and H.D. appealed.  The children have simply joined Manuel B.'s briefing so we will discuss the issues as presented in Manuel B.'s appeal.

## DISCUSSION

Manuel B. argues the juvenile court should have dismissed the section 387 petition after it determined removal of the children was not warranted.  He also contends the Department did not prove the allegations sustained by the court in the first amended supplemental petition.  We disagree with both contentions.

11

## A.  **Standard of Review**

We review the court's jurisdictional and dispositional findings on a section 387 supplemental petition for substantial evidence.  Evidence is substantial if it is reasonable, credible, and of solid value.  We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence, Instead, we draw all reasonable inferences in support of the findings, view the record in favor of the juvenile court's order and affirm the order even if other evidence supports a contrary finding.  The appellant has the burden of showing there is no evidence of a sufficiently substantial nature to support the finding or order.  (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161–1162.)

We review issues of law de novo.  (*In re Javier G.* (2006) 137 Cal.App.4th 453, 459.)

## B.  **The Juvenile Court Did Not Err in Declining to Dismiss the Section 387 Petition.**

Manuel B. contends, as a matter of law, that a section 387 petition is used only when it is necessary to remove a child from the custody of a caregiver.  Manuel B. argues that by the time of the juvenile court's findings, Aiden T. had been removed from the home.  He contends: "Removing Aiden, as unfortunate and troubled a young man as he was, was enough to restore peace and order to this home."  Manuel B. also argues he was completely cooperative in following the Department's recommendations for his own case plan, so that by the time of the jurisdictional hearing on October 2, 2024, the children were not at risk of harm from the matters alleged.  Manuel B. contends that once removal

12

was off the table, the section 387 petition should have been dismissed.  We disagree.

Section 387 permits the filing of a supplemental petition when it becomes apparent that the previous disposition "has not been effective in the rehabilitation or protection of the child." (§ 387, subd. (b).)  If the petition requests changes or modifications of a previous order by removing a child from the physical custody of a parent, guardian, relative or friend and directing placement in a foster home or commitment to a private or county institution, there must be a noticed hearing upon the supplemental petition.  (*Id.*, subd. (a).)

California Rules of Court, rule 5.560(c) provides that a "supplemental petition must be used if petitioner concludes that a previous disposition has not been effective in the protection of a child declared dependent under section 300 and seeks a more restrictive level of physical custody."  A more restrictive level of custody is placement in the home of the person entitled to legal custody; placement in the home of a noncustodial parent; placement in the home of a relative or friend; placement in a foster home; or commitment to a private institution.  (*Ibid.*)

The hearing on a supplemental petition is bifurcated into an adjudicatory hearing on the merits of the petition and a disposition hearing on the need for the removal of the child from the current level of placement.  (*In re Javier G., supra,* 137 Cal.App.4th at p.460.)  The ultimate issue on a supplemental petition is limited to whether the previous disposition was effective in the rehabilitation or protection of the child.  (*Ibid.*)

*In re Javier G.* is apt.  There the mother contended as a matter of law that a section 387 petition cannot be used to remove a dependent child from parental custody for the purpose

13

of rehabilitation rather than for protection.  She pointed out that the focus of dependency proceedings is to protect a child from danger or actual harm and that by the time of the adjudication hearing, the actual harm posed to her child had dissipated.  The court of appeal disagreed, holding that a section 387 petition can be sustained on facts supporting an allegation that the previous disposition has not been effective in the rehabilitation of the child.  (*In re Javier G.*, *supra,* 137 Cal.App.4th at p. 459.)  The court concluded that the term "rehabilitation" in section 387 suggests the restoration of the child's mental or physical health by therapeutic measures, retraining or reeducation.  (*Id.* at pp. 459–460.)

This rehabilitative purpose is a basis to reject the argument that dismissal is mandated when the child's physical safety is no longer at stake.  That the juvenile court eschewed removal in favor of beneficial additional placement conditions and measures short of removal comports with section 387's purpose.

We conclude that the juvenile court's disposition modifying the terms of the placement order without removing the children does not warrant dismissal of the section 387 petition.  Indeed, the California Rules of Court mandate that section 387 supplemental petitions are to be treated and adjudicated in the same manner as initial petitions.  (Cal. Rules of Court, rule 5.565(d) [procedures required for initial hearings applicable to supplemental petitions].)  Initial petitions are not dismissed just because the court, after finding the allegations of the petition true, disagrees with the remedy suggested by the petitioning agency.  The court fashions the remedy it deems appropriate under the circumstances found true.  Indeed, the juvenile court

14

has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order. (*In re Javier G., supra*, 137 Cal.App.4th at p. 462.)

Here the juvenile court found true that Manuel B. had created a detrimental and endangering home environment for the three children when he allowed another youth, whom he knew to possess guns and drugs, to reside in the home with full access to the children, risking their physical safety and emotional health. Thus both protection of their physical safety and rehabilitation due to the emotional and psychological harm they suffered were at issue.

The court then considered whether the prior disposition was still effective in protecting and rehabilitating the children. The court concluded the previous order was not effective. Although the court allowed the children to remain in Manuel B.'s care and custody, it added more conditions to the guardianship and created a case plan for Manuel B. himself for the protection and rehabilitation of the children. This change was important because Manuel B. had revealed that since the initial order appointing him guardian, he had been diagnosed with bipolar disorder, posttraumatic stress disorder and was receiving mental health services, individual therapy and medication management.

Aiden T.'s removal from the home did not solve the problem of Manuel B.'s poor judgment in addressing Aiden T.'s problems to the detriment of the children and, most importantly, Manuel B.'s dismissal of the children's fears for their own safety because of Aiden T.'s residence with them. Manuel B. himself admitted "I got lost in trying to help him." He did get lost, to the detriment of the three children who experienced reasonable fear for their physical safety and whose lives were upended by Manuel B.'s

15

singular focus on Aiden T. and decision not to heed the fears of his longtime wards. Manuel B.'s focus blinded him to Aiden T.'s negative impact on the three other children. This poor judgment caused the court to have concerns about Manuel B. himself as a guardian and to order services for Manuel B. to assist him in his continued care and custody of the children. The court's remedy, short of removal, to further the children's mental health and physical safety did not warrant dismissal of the petition.

C. **Substantial Evidence Supports the Allegations of the First Amended Petition**

Manuel B. next argues that substantial evidence does not support the order sustaining the interlineated petition.

Jurisdictional findings should be made only where the evidence supports a finding the children are at a present risk of harm from the matters alleged. (*In re M.M.* (2015) 240 Cal.App.4th 703, 719 [basic question under section 300 is whether circumstances at the time of the hearing subject the minor to the defined risk of harm].) Manuel B. argues that because Aiden T. was removed from the home on the night of the motel event, he posed no danger to the children. He adds that because he was so cooperative in taking care of his own mental health needs, as recommended by the Department, neither does he pose further danger to the children.

That Manuel B. cooperated fully is a true statement and we applaud him for his persistence in looking after his mental health, improving his parenting skills, and testing negative for all substances. His diligence is a testament to how much he cares for the children, and the record reflects the children love him dearly in return. Notably, Manuel B. does not dispute the facts that form the basis of the section 387 supplemental petition. He

16

simply argues the facts had materially changed by the time of the jurisdictional hearing because Aiden T. was out of the home, Manuel B. was undergoing lots of therapy and parenting education, and the children wanted to be back with him.

A year elapsed between Manuel B.'s discovery of Aiden T.'s first weapon and his discovery of the second weapon along with drugs. The children's welfare suffered as Manuel B. did not act on their fears for their safety. A mere five months elapsed between the motel incident and the jurisdictional hearing. That the juvenile court did not immediately rule that circumstances had changed enough in five months to dismiss the petition is expected and reasonable. That the juvenile court was concerned that Manuel B.'s judgment was impaired is not without support in the record. In its reports the Department aptly observed that Manuel B.'s "description and rationale for taking foster child Aiden to a motel in the middle of the night with a gun and drugs does not make any rational sense." Manuel B. had been the children's legal guardian for over seven years. He dismissed their concerns to focus on a foster child he had tended for one year. His behavior taking Aiden T. to the motel was, at best, inexplicable. Substantial evidence supports the juvenile court's jurisdictional findings that the children were still at risk of harm at the time of the hearing due to Manuel B.'s actions, not just Aiden T.'s.

## DISPOSITION

The juvenile court's order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:


WILEY, J.


SCHERB, J.